**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RAY and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 21, 2018**

# In the Court of Appeals of Georgia

A18A0374. STAPLER v. BOLING et al.

A18A0375. WITCHER et al. v. BOLING et al.

McFADDEN, Presiding Judge.

These appeals challenge a trial court order denying motions to dismiss professional negligence and other claims brought against Evan Stapler, and abusive litigation claims brought against Jack Witcher and Witcher, Inc. Because the claims filed against Stapler were barred by the doctrine of res judicata and the abusive litigation claims brought against Witcher and Witcher, Inc. failed to comply with mandatory notice provisions for such claims, we reverse.

A motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to

warrant a grant of the relief sought. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor. On appeal, we review a trial court's decision to grant or deny a motion to dismiss de novo.

*Best Jewelry Mfg. Co. v. Reed Elsevier Inc.*, 334 Ga. App. 826, 826-827 (780 SE2d 689) (2015) (citations omitted).

So construed, the pleadings show that Anna Smith gave birth to M. I. S. on October 9, 2013. A few weeks later, Smith informally transferred custody and care of M. I. S. to the child's maternal grandmother, Judy Boling. Smith named attorney Evan Stapler and his wife as the child's godparents. Stapler had represented both Smith and Boling in prior legal matters, including Smith's divorce action, Boling's adoption of two of Smith's other children, and a custody matter concerning M. I. S.

On June 8, 2015, Stapler and his wife, with the assistance of attorney Witcher, filed a petition to adopt M. I. S. The trial court issued an ex parte order granting temporary custody of M. I. S. to the Staplers. Smith and Boling both opposed the adoption petition. Boling filed a motion to vacate the ex parte temporary custody order and to dismiss the petition for adoption, claiming that Stapler had breached various duties and state bar rules. A hearing was held on July 8, 2015, and two days later, on July 10, 2015, the trial court issued an order vacating the temporary custody

2

order and dismissing the adoption petition. The court's order further provided that the Staplers must pay $2,500 in attorney fees in resolution of all claims and counterclaims in the case:

> The Petitioners shall cause to [be paid] over to counsel for Respondent . . . an award in attorney's fee, per agreement between the parties, of the sum of $2,500.00, [i]nstanter, in resolution of the claims and counterclaims in this case, and in full settlement of any and all other post-judgment motions which could or might have been brought as a result of this action.

The Staplers promptly made the $2,500 payment. There were no further proceedings in the adoption action and the court's final order of July 10, 2015 was not appealed.

Over a year later, on November 15, 2016, Smith and Boling filed a complaint, which they later amended, against Stapler, Witcher, and Witcher, Inc. The complaint asserted various causes of action against Stapler arising out of his attempt to adopt M. I. S., including claims for professional negligence, negligence, and breach of fiduciary duties. The complaint further alleged that Witcher had participated in a civil conspiracy with Stapler, based on his conduct in representing the Staplers in the adoption action. Stapler and the Witcher defendants each moved to dismiss the claims against them. The trial court denied the motions, but granted certificates of immediate review. This court granted applications for interlocutory review and these appeals

3

followed, with Stapler appealing in Case No. A18A0374 and the Witcher defendants appealing in Case No. A18A0375.

*Case No. A18A0374*

1. *Res judicata.*

Stapler contends that the claims brought against him are barred by the doctrine of res judicata. We agree.

> OCGA § 9-12-40 represents a codification of the common law doctrine of res judicata, and provides: "A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside." The purpose of the doctrine is to prevent the re-litigation of claims which have already been adjudicated, or which could have been adjudicated, between identical parties or their privies in identical causes of action. These prerequisites must be satisfied before res judicata acts as a bar to subsequent litigation – identity of the cause of action, identity of the parties or their privies, and a previous adjudication on the merits by a court of competent jurisdiction.

*Crowe v. Elder*, 290 Ga. 686, 687-688 (723 SE2d 428) (2012) (citations omitted).

As Smith and Boling have conceded, both in the trial court and on appeal, identity of the parties in the actions between them and Stapler is satisfied. As for identity of the claims, the question is whether they "arose from the same set of facts. To determine that question, we must examine the subject-matter and the issues as

4

raised by the pleadings in the two cases. Further, res judicata bars subsequent actions as to all matter put in issue or which could have been put in issue." *QoS Networks Ltd. v. Warburg Pincus & Co.*, 294 Ga. App. 528, 532 (1) (b) (669 SE2d 536) (2008) (citations and punctuation omitted). In the pleadings filed in opposition to the adoption petition, the plaintiffs made similar claims and raised the issues of Stapler's alleged misconduct and violation of bar rules that are alleged as the basis for the current lawsuit. The instant case is effectively

> based on the identical set of facts alleged in [opposition to the adoption petition] with the only difference being that [Smith and Boling] now [have] characterized those allegations as constituting [tort claims for] simple negligence[,] professional negligence[, and breach of fiduciary duties]. And while [appellees] argue[] that [they are] not prohibited from [bringing their] complaint in such a manner, the doctrine of res judicata bars subsequent actions as to all matters put in issue or which could have been put in issue.

*Dove v. Ty Cobb Healthcare Systems*, 316 Ga. App. 7, 9-10 (1) (729 SE2d 58) (2012) (citations and punctuation omitted).

Finally, for an adjudication on the merits,

> [i]t is sufficient that the status of the action was such that the parties might have had their suit thus disposed of, if they had properly presented and managed their respective cases. Thus, it is only where the merits were not and could not have been determined under a proper presentation and management of the case that res judicata is not a viable

5

defense. If, pursuant to an appropriate handling of the case, the merits were or could have been determined, then the defense is valid.

*QoS Networks Ltd.*, supra at 533 (1) (c) (citation omitted). Here, the court's final order in the prior proceeding expressly disposed of all claims, counterclaims, and post-judgment claims that were or could have been brought in that case. Accordingly, because Stapler has shown "sufficient identity of parties, identity of issues, and an adjudication on the merits by a court of competent jurisdiction, the trial court [should have granted the motion to dismiss the] claims." Id.

*Case No. A18A0375*

2. *Abusive litigation claims.*

Witcher and Witcher, Inc., contend that the claims brought against them are in substance abusive litigation claims that must be dismissed because the notice requirements for such claims were not met. We agree.

Georgia's statutory scheme governing abusive litigation claims is set out at OCGA § 51-7-80 et seq. It provides, in part, that "[t]his article is the exclusive remedy for abusive litigation." OCGA § 51-7-85. It further provides: "Any person who takes an active part in the initiation, continuation, or procurement of civil proceedings against another shall be liable for abusive litigation if such person acts:

6

(1) With malice; and (2) Without substantial justification." OCGA § 51-7-81.

Moreover, "OCGA § 51-7-84 (a) requires that the party alleging abusive litigation give written notice to those against whom the claim of abusive litigation is made before bringing suit." *Slone v. Myers*, 288 Ga. App. 8, 11 (2) (653 SE2d 323) (2007) (footnote omitted), overruled in part on other grounds, *Reeves v. Upson Regional Medical Center*, 315 Ga. App. 582 (726 SE2d 544) (2012).

> As a condition precedent to any claim for abusive litigation, the person injured by such act shall give written notice by registered or certified mail or statutory overnight delivery or some other means evidencing receipt by the addressee to any person against whom such injured person intends to assert a claim for abusive litigation and shall thereby give the person against whom an abusive litigation claim is contemplated an opportunity to voluntarily withdraw, abandon, discontinue, or dismiss the civil proceeding, claim, defense, motion, appeal, civil process, or other position. Such notice shall identify the civil proceeding, claim, defense, motion, appeal, civil process, or other position which the injured person claims constitutes abusive litigation.

OCGA § 51-7-84 (a).

In this case, Smith and Boling did not style their claims against Witcher and Witcher, Inc., as abusive litigation claims and instead called them claims for civil conspiracy. However, "we look to the substance and not the style of a particular claim to determine whether it amounts to a claim for abusive litigation. . . . [Plaintiffs] may not avoid the requirements of the statute merely by characterizing their claims arising

7

from the allegedly abusive lawsuit as some other cause of action." *Meadow Springs Recovery v. Wofford*, 319 Ga. App. 79, 82 (1) (734 SE2d 100) (2012) (citations and punctuation omitted). It is apparent from a review of the complaint that the claims against Witcher and Witcher, Inc., are based on Witcher's actions taken during the course of representing the Staplers in the adoption proceeding. Specifically, the initial complaint alleged that Witcher had committed an "abuse of civil process" in filing the petition for adoption and in obtaining the ex parte temporary custody order, and the amended complaint likewise alleged that Witcher had used "improper legalistic means and methods" in filing the petition for adoption, obtaining the ex parte order, and litigating the ensuing adoption proceeding. These allegations are "the essence of an abusive litigation claim." *Slone*, supra (citations omitted). Because the substance of the claims against Witcher and Witcher, Inc. are abusive litigation claims, the appellees "may not avoid the application of the abusive litigation statutes [merely] by characterizing [their] claims founded in the initiation, continuation, or procurement of civil proceedings as [civil conspiracy claims]." *Meadow Springs Recovery*, supra (punctuation and footnote omitted).

In so applying the abusive litigation statutes to this case, as explained above, OCGA § 51-7-84 (a) requires as a condition precedent to bringing suit that the party

8

alleging abusive litigation give written notice to the opposing party by registered or certified mail or statutory overnight delivery or some other means evidencing receipt of the notice. It is undisputed that no such written notice was given to Witcher or Witcher, Inc. "Accordingly, we conclude that the superior court [erred in refusing to] dismiss[] attorney [Witcher and Witcher, Inc.] as defendants in the instant action [because of the appellees'] failure to give written notice that [they] intended to sue them for abusive litigation[.]" *Merchant v. Mitchell*, 241 Ga. App. 173, 174 (1) (525 SE2d 710) (1999) (citations omitted). Accord *Baylis v. Daryani*, 294 Ga. App. 729, 731-732 (2) (669 SE2d 674) (2008) (trial court did not err in dismissing abusive litigation claim where the notice requirement of OCGA § 51-7-84 (a) was not met); *Slone*, supra; *LaSonde v. Chase Mtg. Co.*, 259 Ga. App. 772, 774 (2) (577 SE2d 822) (2003) (affirming dismissal of abusive litigation claim where no written notice given to defendant).

3. *Remaining arguments.*

Because of our holdings above in Divisions 1 and 2, we need not address the appellants' additional arguments.

*Judgments reversed in both Case No. A18A0374 and Case No. A18A0375. Ray and Rickman, JJ., concur in the judgment only.*

9

**THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2**