A05A2130, A05A2131. U. S. MICRO CORPORATION v.
ATLANTIX GLOBAL SYSTEMS, LLC et al.; and vice versa.
(630 SE2d 416)

ADAMS, Judge.

U. S. Micro Corporation brought suit for defamation/libel in Gwinnett County against Atlantix Global Systems, LLC and its president William Woerner arising primarily out of an e-mail by Woerner, in which he suggested that computer equipment sold by U. S. Micro might have "health issues" because it was located nearby when the World Trade Center was attacked on September 11, 2001. Atlantix and Woerner defeated similar claims asserted by a related party in a Fulton County court. Both sides to the present action then filed motions designed to utilize the results of the Fulton County action in this case. The trial court denied both motions. U. S. Micro now appeals, and Atlantix and Woerner cross-appeal.

The record shows that U. S. Micro, Atlantix, and Optimus Solutions, LLC all operate in the computer resale brokerage market. In October 2001, U. S. Micro bought a supply of used Sun Microsystem computers ("the equipment") that had been located in an office building near the World Trade Center on September 11, 2001. U. S. Micro then sought and received bids from Atlantix, Optimus, and others for the resale and remarketing of the equipment on a consignment basis. Optimus won the contract and later sold some or all of the equipment to third parties.

On May 17, 2002, Woerner, president of Atlantix, sent an e-mail to three individuals regarding potential health hazards related to the equipment. The pertinent language of the e-mail reads as follows:

I've heard from several brokers about a potential problem. Apparently Merrill Lynch had numerous machines that were near the WTC disaster and they were to dispose of all machines due to potential health hazards. They were sent to a scrapper here in Atlanta who was requested to properly dispose of them. Guess what? They sold them to another

broker here in Atlanta. . . .

I'm all for other companies making good buys, and applaud them for a job well done. But, if this is in fact true, and these do have potential health issues, it could give us the reputation that was in the magazine article.

There have been several brokers . . . that have expressed concern.

Do you think there is anything we can do? Please let me know your thoughts.

Woerner alleges that he sent the e-mail in his capacity as director of the Association of Service & Computer Dealers International ("AS-CDI"), which he characterizes as a trade group charged with protecting and promoting the computer resale industry reputation. One of the e-mail recipients was Jordan Wolfe, who had purchased some of the equipment from Optimus. At some point after Woerner's e-mail, Wolfe allegedly returned the equipment for a refund.

On May 29, 2002, faced with threats of litigation from U. S. Micro, Woerner sent retraction letters to the recipients of his prior e-mail. The letters stated that since his earlier e-mail, Woerner had "received additional information that leads us to conclude that those allegations were false" and that "we now believe that there was no such equipment at Merrill Lynch that was contaminated, and therefore no contaminated equipment from Merrill Lynch was introduced into the used equipment market wrongfully."

At the time, Atlantix and Optimus were already involved in an unrelated suit in Fulton County involving breach of contract. And in June 2002, Optimus asserted counterclaims in that action for defamation/libel, tortious interference with business relations, and attorney fees against Woerner and Atlantix for the damages caused by the first e-mail.

Six months later U. S. Micro filed the present suit against Atlantix and Woerner (hereinafter "Atlantix") in the State Court of Gwinnett County. Although U. S. Micro initially asserted eight claims,[1] some claims were dismissed and one was withdrawn so that ultimately the action asserts essentially the same claims pursued by Optimus in the Fulton County action: defamation/libel, tortious interference, and attorney fees and litigation expenses.

---

[1] U. S. Micro asserted claims of defamation, tortious interference with business relations, unfair competition, violation of the Georgia Fair Business Practices Act, fraud and deceit, violation of the Georgia Racketeer Influenced and Corrupt Organizations (RICO) Act, negligent misrepresentation, and attorney fees.

Atlantix moved for summary judgment in Fulton County, and on August 16, 2004, the Fulton County trial court granted summary judgment in favor of Atlantix "[f]or each of the reasons set forth . . . in their motion, memorandum of law, and reply memorandum." Accordingly, all claims were dismissed with prejudice. And a settlement was reached in lieu of an appeal. One of Atlantix's arguments in Fulton County had been that it could not be liable for punitive damages because it had issued retraction letters. See OCGA § 51-5-11.

The parties to the Gwinnett County action then attempted to use aspects of the result in Fulton County for tactical advantage in Gwinnett County. First, Atlantix filed a motion for summary judgment asserting that U. S. Micro's claims were barred by collateral estoppel because the same issues had been resolved in its favor in Fulton County and U. S. Micro's interests in the Gwinnett County action were aligned with Optimus's interests in the Fulton County action.

U. S. Micro countered with a motion asserting that the doctrines of judicial estoppel or judicial admission prohibited Atlantix from asserting truth as a defense to libel in Gwinnett County, given that in Fulton County, Atlantix had relied upon the retraction letter and the assertion therein that the original e-mail was false. The trial court denied both motions, and both sides appeal.[2]

### Case No. A05A2131

1. Atlantix contends the result in the Fulton County action bars U. S. Micro's claims in Gwinnett County under the theory of collateral estoppel.[3] Atlantix argues that the Fulton County court held that there was no libel or tortious interference with contract as a result of the e-mail and that U. S. Micro should be bound by that finding.

The Supreme Court of Georgia has explained that collateral estoppel requires an identity of issues and parties or "their privies":

> Collateral estoppel precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action between the same parties or their

---

[2] U. S. Micro's motion for leave to supplement the record with an affidavit not considered by the trial court is hereby denied. Atlantix's motions to strike the same supplemental record are therefore moot. U. S. Micro's motions to strike references to evidence not included in the record are also moot on the ground that the Court does not and has not considered any such evidence. We further add that this appeal has been complicated by the overly zealous litigation tactics of the parties.

[3] Atlantix's second enumeration is now moot because U. S. Micro has withdrawn its Georgia RICO claim.

privies. Collateral estoppel requires identity of the parties and their privies in both actions.

(Citations omitted.) *In re T. M. G.*, 275 Ga. 543, 544 (570 SE2d 327) (2002). Although the parties to the prior action need not be identical, they must be "so connected with a party to the judgment as to have such an identity of" interest that the party to the judgment represented the same legal right." *Butler v. Turner*, 274 Ga. 566, 568 (1) (555 SE2d 427) (2001). "Before privity can be established, the interests of the party must fully 'represent' the interests of the privy and be fully congruent with those interests." *Pinkard v. Morris*, 215 Ga. App. 297, 298 (1) (450 SE2d 330) (1994). Pretermitting whether the same issues have been raised in both actions, Atlantix contends that U. S. Micro and Optimus were privies to the Fulton County action for the purposes of collateral estoppel.

Atlantix first asserts that they were privies because they were parties to the same consignment agreement. But simple contractual privity is insufficient. Black's Law Dictionary points out that there are at least seven types of privities and that contractual privities and litigation privities are two different things. Black's Law Dictionary, p. 1237 (8th ed. 2004). "Privity" is a "connection or relationship between two parties, each having a legally recognized interest in the same subject matter." Id. In this case the subject matter is litigation. The type of relationship required for collateral estoppel is not contractual. Rather, as stated above, the relationship must show that one party has fully represented in litigation the legal right of another and that the two parties' rights are "fully congruent."

Here, the allegedly defamatory e-mail itself easily shows that Optimus did not fully represent U. S. Micro. The e-mail states that one party is a "scrapper" and that instead of failing to "properly dispose" of the equipment it sold it to a broker. The e-mail strongly suggests that the "scrappers" are guilty of wrongdoing on a scale that greatly exceeds any negative inferences that can be attributed to the "broker." Indeed, the e-mail does not indicate whether the purchasing "broker" had knowledge of the alleged problems with the equipment. Assuming that U. S. Micro is the party identified as the scrapper and that Optimus is the broker, as the parties do, the statements made about each one in the e-mail are very different. And just because U. S. Micro's complaint alleged that Atlantix defamed and injured U. S. Micro and Optimus in the same manner does not make it so. "Privity is not established by the mere fact that the persons may happen to be interested in the same question or in proving the same state of facts. [Cit.]" *Smith v. Wood*, 115 Ga. App. 265, 268-269 (154 SE2d 646) (1967). Thus the trial court in the Fulton County action could have concluded that the e-mail did not defame Optimus without

ever considering the impact on U. S. Micro. Under those circumstances, it is obvious that Optimus would not be representing U. S. Micro's interests.

Nor do we find the terms of the consignment agreement sufficient to establish the type of privity required for collateral estoppel. Although not dispositive, the consignment agreement expressly disclaimed any agency, partnership, joint venture or franchise relationship. And the mere fact that the parties were involved in a transaction involving the same equipment, or that they each had a property right in the equipment, or that they each collected a share of the proceeds is not enough. See *Anderson Oil Co. v. Benton Oil Co.*, 246 Ga. 304, 306 (2) (271 SE2d 207) (1980) (privity for the purposes of collateral estoppel not the same as contractual privity). This case is not about property rights but, rather, defamation. Compare *Morris v. Ga. Power Co.*, 65 Ga. App. 180, 187-188 (1) (15 SE2d 730) (1941) (parties were in privity for the purposes of collateral estoppel where both parties had interest in title to the same property and where a certain third party's claim to title was at issue in both suits).

We find it easy to decide that the trial court was authorized to conclude that the two parties were not privies to the Fulton County libel action. Accordingly, we affirm the trial court's denial of Atlantix's motion for summary judgment.

*Case No. A05A2130*

2. Based on the idea that Atlantix had, at least in part, defeated the claims against it in Fulton County by relying on the retraction letters — including that the letters said the allegations in the original e-mails were "false" — U. S. Micro moved to bar Atlantix from asserting truth as a defense to the defamation/libel claims in Gwinnett County. U. S. Micro relied on two arguments. First, under the doctrine of collateral estoppel, because Atlantix had "proved the viability of the Retraction Letters in obtaining summary judgment in the Fulton County action," it could not in the Gwinnett County action assert truth of the original e-mail as a defense. Second, Atlantix made an admission in judicio by relying on the retraction letters in Fulton County and therefore it cannot assert truth as a defense in Gwinnett County. The trial court denied the motion. In two separate enumerations of error, one for each theory, U. S. Micro contends the trial court erred.

(a) Collateral estoppel precludes only those issues actually litigated or those that by necessity had to have been decided for the judgment to have been rendered. *Shields v. BellSouth Advertising &c. Corp.*, 273 Ga. 774, 777 (545 SE2d 898) (2001).

The court in Fulton County wrote only that it granted summary judgment in favor of Atlantix "[f]or each of the reasons set forth . . . in their motion, memorandum of law, and reply memorandum." In those Fulton County pleadings, Atlantix made several arguments, including that there was no defamation because the original e-mail was not "published" as required by defamation law in that it was only sent to ASCDI members. Atlantix also argued that the original e-mail was simply not defamatory as a matter of law against Optimus, that the e-mail was privileged, and that Optimus's claims lacked proximate cause. Finally, it argued that Optimus could not receive punitive damages because Atlantix had retracted the e-mail.

Given that the court granted full summary judgment, it necessarily determined that there was no liability, and the question of punitive damages became moot. There is simply no way to construe the Fulton County action as having actually litigated the question of punitive damages. Accordingly, Atlantix is not collaterally estopped by the judgment in that action with regard to the retraction letters.

(b) "When admissions in pleadings are introduced as evidence in a later and different action . . . , they no longer operate as admissions in judicio, but rather as evidentiary admissions which may be explained or contradicted." *Khamis Enterprises v. Boone*, 224 Ga. App. 348, 350 (480 SE2d 364) (1997) (plaintiff not barred from enforcing an easement that he alleged had been procured by deception and fraud in an earlier lawsuit); *Foster v. State*, 157 Ga. App. 554, 555-556 (278 SE2d 136) (1981) (wife's verified allegations in divorce complaint that child was a product of the marriage did not estop her from asserting that the child had a different father in a subsequent abandonment action); *Wise &c. Assoc. v. Rosser White &c., Inc.*, 146 Ga. App. 789, 790 (1) (247 SE2d 479) (1978) ("an admission made in another case does not have the same effect as a judicial admission in the same case"). Accordingly, Atlantix may explain any admissions made in the Fulton County action. The trial court did not err on this point.

We find *Tandy Computer Leasing v. Smith*, 186 Ga. App. 101 (366 SE2d 417) (1988), to be inapposite. There the relevant admissions were made in the case at bar, not in a prior action. Also, *Commercial Union Assurance Co. Ltd. v. Chattahoochee Lumber Co.*, 130 Ga. 191 (60 SE 554) (1908), is not on point. That case involved a stipulation by attorneys who represented two insurance companies that had been sued in separate suits by the same insured involving the same insured property; it did not involve a judicial admission by a party.

3. Finally, although U. S. Micro concedes that OCGA § 51-5-11 (c) bars recovery of punitive damages on its defamation/libel claim because Atlantix issued the retraction letters, it contends the trial court erred by barring punitive damages arising from its claim of

tortious interference. We agree. The plain language of OCGA § 51-5-11 shows that it is applicable only to "any civil action for libel." See also *Van Geter v. Housing Auth. of Atlanta*, 167 Ga. App. 432, 433 (306 SE2d 707) (1983) (OCGA § 51-5-11 only applies to libel actions). Also, Atlantix offers no case law in support of the trial court's position, and we find none. This portion of the trial court's order must be reversed.

*Judgment affirmed in Case No. A05A2131. Judgment affirmed in part and reversed in part in Case No. A05A2130. Smith, P. J., and Ellington, J., concur.*

DECIDED MARCH 30, 2006.

*Davidson & Tucker, Gerald Davidson, Jr., Epstein, Becker & Green, Jeffrey Y. Lewis, Jeffrey P. Lutz, Troutman Sanders, Kenneth R. Ozment, Mark S. VanderBroek*, for appellant.

*Alston & Bird, Harold S. Harris, Jr., Jack P. Smith III, Samantha L. Hill, T. Michael Tennant*, for appellees.