A07A2264. QOS NETWORKS LIMITED et al. v. WARBURG, PINCUS & COMPANY et al.

(669 SE2d 536)

BARNES, Chief Judge.

Appellant QoS Networks Limited, an Irish telecommunications company, filed suit in Cobb County against Warburg, Pincus & Company, a private equity investment company, for fraud, breach of fiduciary duty, promissory estoppel, and tortious interference with contract. QoS shareholders also sued Warburg in New York, and the New York trial court ruled first, granting summary judgment to Warburg in a decision affirmed by the New York appellate court in *O'Neill v. Warburg, Pincus & Co.*, 39 AD3d 281 (N.Y. App. Div. 2007). The trial court in this action then granted summary judgment to Warburg on res judicata grounds. QoS appeals, arguing that the New York court decision did not reach the merits and therefore did not foreclose action on this suit. Because the New York courts considered both the standing issue and the merits, the trial court did not err in granting summary judgment to the defendants on grounds of res judicata.

In 2000, Warburg invested $30 million into QoS, a corporation formed in 1999 to develop a new type of global telecommunications service provider. QoS ran out of money and ultimately filed for bankruptcy in August 2001, then filed suit in Georgia against Warburg, its related entities,[1] and four individuals[2] for promissory

---

[1] E. M. Warburg, Pincus & Company, Inc., Warburg, Pincus Equity Partners, L.P., Warburg, Pincus Netherlands Equity Partners I, C.V., Warburg, Pincus Netherlands Equity Partners II, C.V., and Warburg, Pincus Netherlands Equity Partners III, C.V.

[2] James Hendrickson was a QoS director, Robert Glanville and Roberto Italia were QoS directors appointed by Warburg, and Bernard Reagan was a QoS employee.

estoppel, breach of fiduciary duty, tortious interference, and fraud. All of the defendants denied liability, and three of them (Warburg, Glanville, and Italia) also counterclaimed against QoS and filed a third-party complaint against QoS directors Michael Keane, Lawrence O'Neill, and James Valentine, alleging fraud and negligent misrepresentation.

Meanwhile, Warburg filed suit in New York against Keane, O'Neill and Valentine for defaulting on promissory notes the three men signed when they borrowed money from Warburg to purchase stock in QoS. These three men subsequently sued Warburg in New York in their capacity as QoS shareholders ("Management Share-holders"), asserting breach of fiduciary duty, fraud, and tortious interference in an almost verbatim copy of the Georgia complaint, but using different counsel.

In yet another action, 24 Non-Management Shareholders sued Warburg separately in New York, asserting the same three causes of action, represented by the same counsel as the Management Share-holders and again using an almost verbatim copy of the Georgia complaint. The Management and Non-Management shareholders' New York actions were eventually consolidated, and in February 2005, the New York trial court granted Warburg's motion to dismiss the fraud claims, holding that the shareholders' basic complaint — that the value of their stock had diminished — was derivative in nature and thus had to be brought on behalf of QoS instead of by the stockholders individually. Further, the court held, even if the share-holders had standing to sue individually, they could not establish that they reasonably relied on Warburg's alleged promises to provide additional funding because the express terms of the parties' con-tracts said otherwise.

In January 2006, the New York court granted summary judg-ment to Warburg on the shareholders' damages claims for lost profits because as a start-up company, QoS had no profit history. In February 2006, the New York court granted summary judgment to Warburg on the remaining claims, holding that the shareholders lacked standing to sue because their claim belonged to the company, not to them individually. Additionally, the court held, Warburg exercised its bargained-for contract right in voting against the proposed capital restructuring and in the absence of evidence it acted for an illegitimate purpose or in bad faith, its conduct could not constitute a breach of fiduciary duty. The court also found that the shareholders failed to produce evidence to support their breach of contract claims.

In October 2006, the trial court in this case ruled on 16 pending motions and in a thorough, well-reasoned order, granted summary judgment to Warburg because the claims against it were barred by

res judicata. The court also granted summary judgment to QoS director Hendrickson, holding that QoS's claims against him were barred by collateral estoppel.

After QoS filed its notice of appeal but before the appeal was docketed in this court, in April 2007 the Appellate Division of the Supreme Court of New York affirmed the trial court's grant of summary judgment to Warburg against the QoS shareholders. *O'Neill v. Warburg*, supra, 39 AD3d at 283. The appellate court held that the trial court properly decided the procedural matter of standing and agreed that the shareholders failed to establish a claim for breach of fiduciary duty. Id. The New York appellate court also affirmed the summary judgment to Warburg on the shareholders' claims for lost profits and breach of duty to act in good faith, claims based on Warburg's previous lawsuits brought after the three Management Shareholders defaulted on their loan agreements. Id. at 282.

In those actions, Warburg successfully obtained judgments against the investors to recover the money it lent them to buy QoS stock. The trial court in those actions found that the investors had received the benefit of their bargain under the agreements and had to repay the loans. The appellate court in those cases agreed with the trial court that the investors failed to establish that Warburg breached its implied duty of good faith after they defaulted on their loans. *Warburg, Pincus Equity Partners v. O'Neill*, 11 AD3d 327 (N.Y. App. Div. 2004); *Warburg, Pincus Equity Partners v. Keane*, 22 AD3d 321 (N.Y. App. Div. 2005).[3]

QoS contends in this appeal that the trial court in this case erred in ruling that its claims were barred by the principles of res judicata. It argues that the Georgia action was filed by the corporation, which had the right to bring the direct action against Warburg, and the New York action was filed by the shareholders, who did not have that right and whose claims were dismissed "on the procedural basis that only the corporation has the right to bring the claim." Barring the corporation's action based on the shareholders' case, it says, "produces the curious result that no one can bring this action." This argument seems inviting in its simplicity, but the problem for QoS is that the New York courts considered more than just the standing issue. Both the trial and appellate courts also reviewed the evidence to determine whether questions of fact existed on the shareholders' fraud, breach of fiduciary duty, breach of contract, and damages

---

[3] The parties filed multiple actions against each other in New York, which appear to have been consolidated and ruled on either in the shareholders' actions or Warburg's repayment actions against QoS and other individuals. See *Warburg, Pincus & Co. v. QoS Networks Ltd.*, 25 AD3d 468 (N.Y. App. Div. 2006) for a list of cases.

claims and entered conclusions of law that were affirmed by the New York appellate court.

Warburg responds that under both Georgia and New York law, if an opinion states alternative reasoning, either of which may sustain the holding, both reasonings are equally authoritative.

1. *QoS's claims against Warburg.* "Res judicata prevents a plaintiff from instituting a second complaint against a defendant on a claim that has already been brought, after having previously been adjudged not to be entitled to the recovery sought on that claim." (Footnote omitted.) *Roth v. Gulf Atlantic Media &c.*, 244 Ga. App. 677, 678 (1) (536 SE2d 577) (2000). The fundamental elements of res judicata are: (a) the parties are identical; (b) the causes of action are identical; and (c) the prior adjudication was made on the merits by a court of competent jurisdiction. *Brown v. J. H. Harvey Co.*, 268 Ga. App. 322, 324 (3) (601 SE2d 808) (2004). Additionally, for the principle to apply, the party against whom the doctrine is raised must have had a full and fair opportunity to litigate the issues in the first action. *Fowler v. Vineyard*, 261 Ga. 454, 455-456 (1) (405 SE2d 678) (1991).

When a grant of summary judgment in another suit is relied upon to support a plea of res judicata, we must examine the basis of the prior summary judgment. If that summary judgment actually adjudicated the merits, this court will sustain the plea of res judicata, but if the summary judgment did not adjudicate the merits, then this court will deny the plea. *Robinson v. Starr*, 197 Ga. App. 440, 441 (1) (398 SE2d 714) (1990).

(a) *Identical parties.* "The term 'party' to an action includes all who are directly interested in the subject matter, and who have a right to make defense, control the pleadings, examine and cross-examine witnesses, and appeal from the judgment. [Cits.]" *State Bar of Ga. v. Beazley*, 256 Ga. 561, 563 (1) (b) (350 SE2d 422) (1986).

Although QoS is the named plaintiff in this action and the shareholders were the named plaintiffs in the New York action, the Management Shareholders constitute QoS's board of directors and control all of the QoS stock. They hired and directed both Georgia and New York counsel and were instrumental in instigating the Non-Management Shareholders to file suit. They chose to litigate in both forums, and cannot now obtain a second bite at the apple by contending that their interests were not fairly represented here.

Further, the record establishes that QoS declined to be made a formal party to the New York action, refusing to accept service of Warburg's third-party complaint and opposing Warburg's motion to consolidate one of the promissory note actions with the shareholders' action against it, even though it sought to be added as a party to that action. Further, when Warburg instituted the first of its three

separate New York actions against the Management Shareholders seeking repayment under a promissory note, its counsel offered to consolidate those actions in Georgia, but the shareholders declined, instead filing their own suit in that state. For QoS to argue that it had no opportunity to litigate its claims in New York is patently untrue.

As to plaintiff Gregory Bauer, the trial court did not dismiss his claims on res judicata grounds; it granted Warburg partial summary judgment on Bauer's claim of breach of fiduciary duty, but found issues of fact regarding Bauer's fraud claim against all defendants and his tortious interference claim against Warburg.

(b) *Identical causes of action.* The question in determining whether an issue has already been decided by another court is whether both claims arose from the same set of facts. To determine that question, we must "examine the subject-matter and the issues as raised by the pleadings in the two cases." *Gamble v. Gamble*, 204 Ga. 82, 87 (1) (48 SE2d 540) (1948). Further, res judicata bars subsequent actions as to all matter put in issue or which could have been put in issue. OCGA § 9-12-40; *Fedeli v. UAP/Ga. Ag. Chem.*, 237 Ga. App. 337, 341 (514 SE2d 684) (1999). In other words, "one must assert all claims for relief concerning the same subject matter in one lawsuit and any claims for relief concerning that same subject matter which are not raised will be res judicata." (Citations, punctuation and emphasis omitted.) *CenTrust Mtg. Corp. v. Smith & Jenkins, P.C.*, 220 Ga. App. 394, 397 (2) (469 SE2d 466) (1996). In both the Georgia and the New York suit, the agreement between Warburg and QoS is the subject. And while QoS raised the promissory estoppel and tortious interference claims only in the Georgia suit, they could have been raised in the New York suit. The subject matter in both the Georgia and New York suits is virtually the same.

(c) *Adjudicated on the merits by a court of competent jurisdiction.* The parties agree that the New York court was one of competent jurisdiction, but disagree whether the decision was on the merits. If the New York courts had simply held that the Management Shareholders lacked standing to bring that action, QoS's contention that the court had not reached the merits would be a harder case. But the trial court did much more than that. It also decided issues on the merits, and that decision was affirmed by the New York appellate court. While QoS argues that the alternative holdings are dicta and therefore not determinative here, that is not the law in this state.

> A ruling is not dictum merely because the disposition of the case is or might have been made on some other ground. Where a case presents two or more points, any one of which

is sufficient to determine the ultimate issue, but the court actually decides all such points, the case is an authoritative precedent as to every point decided, and none of such points can be regarded as having merely the status of a dictum.

(Citations and punctuation omitted.) *Vann v. American Credit Co.*, 115 Ga. App. 559, 561 (2) (155 SE2d 459) (1967). Neither is it the law in New York. See *People v. R. Express Agency*, 67 NYS2d 732, 735 (N.Y. App. Part 1947) (court's holding in another appellate case "constituted one of the several reasons" for its holding and therefore was not obiter dictum).

[A]n "adjudication on the merits" does not require that the litigation should be determined on the merits, in the moral or abstract sense of these words. It is sufficient that the status of the action was such that the parties might have had their suit thus disposed of, if they had properly presented and managed their respective cases. Thus, it is only where the merits were not and could not have been determined under a proper presentation and management of the case that res judicata is not a viable defense. If, pursuant to an appropriate handling of the case, the merits were or could have been determined, then the defense is valid.

(Citation and emphasis omitted.) *Fedeli v. UAP/Ga. Ag. Chem.*, supra, 237 Ga. App. at 342.

Because Warburg showed sufficient identity of parties, identity of issues, and an adjudication on the merits by a court of competent jurisdiction, the trial court did not err in granting it summary judgment against QoS on all its claims.

2. *QoS's claims against Hendrickson.* QoS argues that Hendrickson was not a party to the New York action, and thus its claims against him have not yet been decided. The trial court held that the claims against Hendrickson were barred by collateral estoppel, which "precludes relitigation of issues actually litigated and necessary to the outcome of the first action." (Citations and punctuation omitted.) *Sorrells Constr. Co. v. Chandler Armentrout &c., P.C.*, 214 Ga. App. 193, 194 (447 SE2d 101) (1994).

Defendant Hendrickson was not a named party in the New York suits, but the trial court found that QoS's claims of promissory estoppel, breach of fiduciary duty, and fraud against him were barred by the doctrine of collateral estoppel.

In this State,

the collateral estoppel doctrine precludes the re-adjudication of an issue that has previously been litigated

and adjudicated on the merits in another action between the same parties or their privies. Like res judicata, collateral estoppel requires the identity of the parties or their privies in both actions. However, unlike res judicata, collateral estoppel does not require identity of the claim — so long as the issue was determined in the previous action and there is identity of the parties, that issue may not be re-litigated, even as part of a different claim.

(Citation omitted.) *Thomas County Bd. of Tax Assessors v. Thomasville Garden Center*, 277 Ga. App. 591, 593 (2) (627 SE2d 192) (2006).

(a) *Identity of parties or privies.* While parties need not be identical, they must be so connected with a party to the previous judgment that the party fully represents the interest of the privy. *U. S. Micro Corp. v. Atlantix Global Systems*, 278 Ga. App. 599, 602 (1) (630 SE2d 416) (2006). Although Hendrickson and Warburg are separate entities, "privity connotes those who are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right." (Citation and punctuation omitted.) *Miller v. Steelmaster Material Handling Corp.*, 223 Ga. App. 532, 535 (3) (478 SE2d 601) (1996). The trial court noted that Hendrickson served on the QoS board of directors as chief operating officer from its inception to April 2001, and that in its complaint QoS treated Warburg and Hendrickson as "joint tortfeasors" by alleging that Hendrickson assisted Warburg in taking various tortious actions. If Warburg with its greater number of shares and influence is not liable to QoS for damages, Hendrickson with his lesser influence would not be liable, and thus Warburg and Hendrickson were "in privity for the purposes of asserting the defense of collateral estoppel."

(b) *Identity of issues.* The New York courts held that QoS could not rely on any statements by Warburg regarding future financing for the start-up; thus QoS's claim against Hendrickson for promissory estoppel based on alleged promises of future financing are collaterally estopped. Similarly, QoS's breach of fiduciary duty claims against Hendrickson based on his exercising Warburg's express contractual rights and its fraud claims have already been decided by the New York courts.

Because Hendrickson was in privy with Warburg and both the Georgia and New York suits arose from the same issues, the trial court did not err in granting summary judgment to Hendrickson on collateral estoppel grounds.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED NOVEMBER 14, 2008.

*George M. Geeslin*, for appellants.
*Wagner, Johnston & Rosenthal, Michael S. Rosenthal*, for appellees.